MAX J. KRAMER, as Executor, etc., of YATTY KRAMER, Deceased, Appellant, v. EDMUND FRANCIS REALTY COMPANY, Respondent.

First Department, December 17, 1920.

Mortgages — foreclosure of mortgage on real property — defense of lack of consideration and unauthorized execution of mortgage by officers and directors of defendant not sustained by evidence.

In an action to foreclose a mortgage on real property in which the defense interposed was failure of consideration and that the execution of said mortgage was the unauthorized act of the officers and directors of the defendant, the evidence examined, and *held*, to be insufficient to sustain the defense.

APPEAL by the plaintiff, Max J. Kramer, as executor, etc., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Bronx on the 28th day of May, 1919, upon the decision of the court rendered after a trial at the Bronx Special Term dismissing the plaintiff's complaint upon the merits.

*Eugene D. Boyer* of counsel [*Charles Strauss* with him on the brief], *Strauss, Reich & Boyer*, attorneys, for the appellant.

*Spotswood D. Bowers* of counsel [*George A. Lewis* with him on the brief], *Scott, Gerard & Bowers*, attorneys, for the respondent.

MERRELL, J.:

This action was brought to foreclose a second mortgage on real property lying in Bronx county in the city and State of

New York on Briggs avenue, 205 51/100 feet southerly from the intersection of the easterly side of said Briggs avenue with the southerly side of One Hundred and Ninety-fourth street. The mortgaged real estate is known herein as the Briggs avenue property.

The defendant, Edmund Francis Realty Company, interposed an answer to the complaint in foreclosure consisting substantially of a general denial of the allegations of the complaint, except that it admitted in said answer that an alleged mortgage in the form set forth in the complaint was recorded in the office of the register of Bronx county, but denied that said instrument was a mortgage and assailed its validity, claiming that said defendant received no consideration therefor.

For a first separate defense to the alleged cause of action set forth in the complaint herein the defendant alleged that in the year 1916 and for several years prior thereto, the plaintiff, Max J. Kramer, was the president of a corporation known as the Grand Boulevard Holding Corporation, which corporation was dominated by said Kramer, and was, in fact, little more or less than himself incorporated; that in the year 1916 the real property described in the complaint as covered by the mortgage therein set forth stood in the name of said Grand Boulevard Holding Corporation but was in fact, as the plaintiff well knew, the property of the defendant; that said property at the time was subject to a first mortgage for $4,500, and that said property was in value worth over $8,000.

The defendant further alleged in its answer that one Albert E. Hartcorn, then president of the defendant, was indebted to said Kramer personally in a considerable sum of money, and for the purpose of paying said debt to said Kramer said Hartcorn, with the knowledge and consent of Kramer, arranged with said plaintiff that the said Grand Boulevard Holding Corporation should execute a pretended conveyance of the property to one Beatrice Birnbaum, a stenographer for said Hartcorn, and that said Beatrice Birnbaum should execute a pretended purchase-money mortgage for $3,750 in favor of said Grand Boulevard Holding Corporation, which mortgage should be accepted by said Kramer as payment of said indebtedness of said Hartcorn to himself.

The defendant further alleges that at that time the equitable

title to said property was in the defendant, all of which was well known to the plaintiff, and that in spite of this knowledge, he, as an officer of the Grand Boulevard Holding Corporation, executed said deed of said property to said Beatrice Birnbaum and accepted from her said pretended purchase-money mortgage for $3,750; that when said deed and purchase-money mortgage to said Grand Boulevard Holding Corporation were executed there was a misnomer and the transaction was carried out in the name of the Grand Boulevard Holding Company, and was known to the plaintiff at the time thereof, and defendant alleged in its answer that said misnomers were intentionally used for laying the foundation for matters thereinafter in said answer referred to.

The defendant further alleged that shortly after the execution of said purported deed and mortgage the plaintiff made claim that said deed and mortgage were executed under misnomer and that he had assigned said mortgage to the estate of Yatty Kramer, of which estate he was an executor, and represented that in order to satisfy the title company it was necessary to correct said misnomers and suggested that instead of correcting said purported deed and purchase-money mortgage the Grand Boulevard Holding Corporation should execute a new deed to the Edmund Francis Realty Company and said corporation should execute directly to the said estate of Yatty Kramer a mortgage for a like amount, to wit, $3,750; that thereafter pursuant to this suggestion and in January, 1917, a deed was executed by said Max J. Kramer, as president of the Grand Boulevard Holding Corporation, to the defendant, and the said Albert E. Hartcorn, as president of the defendant, executed a bond and mortgage in the name of the defendant to said estate of Yatty Kramer, and the check of said estate was drawn to the order of the defendant, and thereupon immediately indorsed by Hartcorn as president of the defendant over to said Grand Boulevard Holding Corporation, and that no money was ever received or retained by said defendant, and that the sole purpose of giving said check to the defendant was to make it appear that said defendant had received $3,750 from the estate of Yatty Kramer for said mortgage, when, as a matter of fact, the payment by said estate was intended to be and was in fact directly to said Grand

Boulevard Holding Corporation, of which said Max J. Kramer was president.

The defendant further alleged that the defendant never received any consideration of any name, nature or description whatsoever from the estate of Yatty Kramer or from any other person on account of said estate for the execution of said mortgage, and that the sole and only consideration and reason therefor were the facts above set out.

As a second separate and partial defense to the alleged cause of action in the complaint set forth the defendant alleged that at the time of the execution of the pretended mortgage in 1916 by the said Beatrice Birnbaum to the Grand Boulevard Holding Corporation, said Beatrice Birnbaum executed a bond to said Grand Boulevard Holding Corporation in the name of the Grand Boulevard Holding Company, wherein she promised and agreed to pay the sum of $3,750.

The defendant further alleges in its second separate and partial defense in said answer that at the time of the transactions referred to as occurring in the year 1917 wherein the defendant was requested to and did execute a mortgage upon the premises in question to the estate of Yatty Kramer for the purpose of curing the misnomer above referred to, there was no liability on the part of said Edmund Francis Realty Company to obligate itself upon any bond for the payment of said sum of $3,750, and that said bond was executed without any consideration whatsoever going to the said defendant from the estate of Yatty Kramer, and was given solely and only for the purpose of curing said misnomer; and, on information and belief, that the plaintiff knew there was no liability on the part of the defendant to execute said bond, and that the same was without consideration and that his intent and purpose in suggesting the execution of the deed from the Grand Boulevard Holding Corporation to the defendant in the year 1917 and the execution of the mortgage and bond by said corporation to the estate of Yatty Kramer was for the express purpose of obtaining the name of the defendant to said bond in the place and stead of said Beatrice Birnbaum whom he knew to be financially irresponsible, and in the knowledge and belief that the defendant was solvent.

The issues raised by the pleadings came on for trial at

Special Term in Bronx county, and at the close of the evidence the learned trial court made its decision finding the facts with reference to the transaction substantially as claimed by the defendant, and upon said facts thus found in favor of the defendant found as conclusions of law:

1. That the bond and mortgage described in the complaint were made without consideration to the defendant and no amount is due thereon.

2. That the making and delivery of said bond and mortgage were the unauthorized acts of the officers and directors of the defendant and are not binding upon it.

3. That the complaint should be dismissed upon the merits and the said bond and mortgage adjudged to be void and canceled of record.

Judgment was directed accordingly in favor of the defendant dismissing the plaintiff's complaint, with costs.

After an examination of the testimony I am unable to agree with the learned trial court in the determination which it thus reached. The first finding of fact of the court's decision was as follows:

" 1. That in or about the month of February, 1914, the defendant, in exchange for certain other premises conveyed by it, received a conveyance of the premises described in the complaint as the mortgaged premises. This conveyance was made by a deed in which the name of the grantee was left blank, and which was delivered in that form to the defendant."

I have read the record in vain to find any proof to sustain this first finding of fact, which is a necessary element in sustaining the position of the defendant. Concededly, in order to maintain its defense, the defendant is required to show that at the time of the execution of the deed from the Grand Boulevard Holding Corporation to defendant's stenographer, Beatrice Birnbaum, and the latter's execution and delivery of the purchase-money mortgage back for $3,750, the defendant was the actual owner of said Briggs avenue property. Unless the defendant did in fact own said property at the time of the execution and delivery of such mortgage, any mortgage lien created thereby could not be a payment by defendant of Hartcorn's personal obligation to Kramer. The record is quite barren of evidence of sufficient probative value to sustain

defendant's contention on this essential point.   The respondent contends that certain circumstances attending an exchange of properties between Kramer and Hartcorn in February, 1914, establish its claim.   The only witness who testified to the exchange of properties was one Rogers, who at that time claimed to have been in the employ of Albert E. Hartcorn, the president of the defendant.   Rogers testified that in February, 1914, he was present at a closing of a trade between Hartcorn and Kramer, and that the trade concerned the Briggs avenue lots covered by the mortgage herein; that there was no contract of exchange between Kramer and Hartcorn, but that there was an exchange of properties between them; that he was in Hartcorn's employ at the time and at the request of both Kramer and Hartcorn he examined the instruments which were to be delivered back and forth, and figured up for them the financial statement of the closing, and that deeds of the properties that were exchanged were passed at that time, including the Briggs avenue lots.   The witness' recollection was that the grantee of those lots was left in blank in the deed.   This falls far short of showing that there was any conveyance by Kramer to the defendant Edmund Francis Realty Company of said lots.   It is true Hartcorn was the president of the defendant, but all that Rogers' testimony indicates is that there was an exchange of properties between Kramer and Hartcorn, not between Kramer and the defendant.   The only scrap of evidence which the defendant was able to produce upon the trial showing any connection of the defendant Edmund Francis Realty Company with the transaction was that Rogers testified that he furnished a rough memorandum to a Miss Wilansky, a bookkeeper in the employ of Hartcorn, showing the figures with reference to such exchange, and the testimony of the bookkeeper, who, since the transaction, had married and whose name, at the time of the trial, was Rebe W. Gissing.   This witness testified to having received this memorandum from Rogers and in due course of business entering the same in the check book of the Edmund Francis Realty Company.   The check book was produced and we are asked to hold that an entry contained therein as follows: " Interest, Briggs Avenue, Mortgage, $4,500, 5% 8/1 to 12/1, $75," indicates that at that time said Briggs avenue property

was set over to the Edmund Francis Realty Company. It is possible that this entry, if competent evidence, might have some significant bearing in line with the claim of the defendant, but I think it falls far short of showing that at that time the equitable title of the property passed to the defendant. So far as I have been able to find that is the only piece of evidence in the entire case upon which the defendant relies as a basis for its defense herein. Concededly, unless the defendant is able to point out evidence establishing such equitable title in the defendant, the defense must fall. The claim of the defendant is that the entry in the check book of the defendant indicated a transfer of the Briggs avenue property to said defendant at that time as the entry appeared on the credit side in favor of Kramer, and that such entry on the stub of the check book indicated that the defendant in the closing paid $75 of interest on the prior $4,500 mortgage from August first to December first, at five per cent. This entry may have some significance, yet, standing alone, even had its competence as evidence been established, I do not think an entry in a check book, made by a bookkeeper from a memorandum furnished by another employee, of sufficient probative value to establish a title in real property.

Defendant attaches much importance to the circumstance that taxes upon said property for the years 1915 and 1916 were paid by this defendant, but said taxes were not paid until June 13, 1917, which concededly was after the defendant had acquired title to the premises. It appears from the evidence that the affairs of Hartcorn and his two companies, the Narcorth Realty Company and the Edmund Francis Realty Company, both of which he organized and owned, were so intermingled that entries in the check book of the defendant had really little significance. Indeed, it appears by the testimony of the witness Gissing (formerly Wilansky, bookkeeper in the employ of Hartcorn) that on January 28, 1916, the Narcorth Realty Company paid the semi-annual interest on the prior $4,500 mortgage on the Briggs avenue property, and that on the sixth of the following September said Narcorth Realty Company paid a further semi-annual installment of interest on said prior mortgage, the checks for said two interest payments being the checks of the Narcorth Realty Company, and

being signed, respectively, by Hartcorn, the president, and Miss Wilansky, the treasurer, of said Narcorth Realty Company. It is very evident that Hartcorn was really the Edmund Francis Realty Company, forty-eight fiftieths of the stock of which he owned, and was as well the Narcorth Realty Company, and that Kramer was the Grand Boulevard Holding Corporation, all of the stock of which he owned. But the evidence given upon the trial does not show that transactions between the individuals were necessarily those of the corporation with which they were connected. In short, I think the defendant failed to produce any evidence to meet the proof of the plaintiff as to the execution of the mortgage sought to be foreclosed herein upon consideration for moneys paid to the defendant from the estate represented by the plaintiff.

Upon the trial the plaintiff was sworn as a witness in his own behalf and made out a *prima facie* case of the execution by the defendant of the bond and mortgage in suit, of the payment of full consideration therefor by plaintiff, as executor of the estate of Yatty Kramer, deceased, to defendant, and of the latter's default in payment of the principal sum secured by said bond and mortgage, besides interest thereon since March 8, 1918. Plaintiff was not cross-examined. Upon such showing plaintiff made out a *prima facie* case entitling him to the judgment of the court decreeing a foreclosure of said mortgage.

Without considering the admissibility in evidence of said check book entries, about which there is serious doubt, I think, taking the defendant's evidence at its best, it did not meet the *prima facie* case made by the plaintiff, and that the plaintiff should have been granted a decree of foreclosure.

The findings of fact and the judgment herein should be reversed, with costs to appellant, and appropriate findings made in place thereof upon which to base a decree of foreclosure in plaintiff's favor, granting a decree of foreclosure of the mortgage set forth in the complaint, with costs to the plaintiff.

CLARKE, P. J., LAUGHLIN, SMITH and PAGE, JJ., concur.

Judgment reversed, with costs, and decree of foreclosure granted, with costs to plaintiff. Settle order on notice.